Timothy Sandefur (224436)
Adam Shelton (Pro Hac Vice Pending)
**Scharf-Norton Center for**
**Constitutional Litigation at the**
**GOLDWATER INSTITUTE**
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

Michael K. Friedland (157217)
**FRIEDLAND CIANFRANI LLP**
17901 Von Karman Ave., Ste. 925
Irvine, California 92614
(949) 734-4900
Michael.friedland@fciplaw.com

*Attorneys for Plaintiffs*

**IN THE U.S. DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| FLYING GOAT CELLARS, INC., a California general corporation; NORM YOST, an individual; and KATHLEEN GRIFFITH, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SANTA BARBARA COUNTY BOARD OF SUPERVISORS, a government entity; BOB NELSON, in his official capacity as Chairman of the Board of the Santa Barbara Board of Supervisors; SANTA BARBARA COUNTY VINTNERS ASSOCIATION, a business league;<br><br>Defendants. | Case No. 2:26-cv-5489<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR AN AWARD OF DAMAGES** |

**INTRODUCTION**

1.     This is a civil rights action to vindicate the bedrock constitutional principle that the government may not compel a private citizen or business to fund, join, or subsidize the speech of a private association. By creating the Santa Barbara County Wine Improvement District ("SBCWID"), Defendants have forced Plaintiffs, a small, family-owned winery and its owners, to become involuntary members of, and pay a one-percent assessment to, the Santa Barbara County Vintners' Association ("SBCVA")—a private entity that lobbied the County for this exact subsidy. As a result: (1) Plaintiffs are now

compelled to subsidize speech and advocacy with which they disagree; (2) Plaintiffs' private property, their money, is taken without a legitimate public use; and (3) Plaintiffs are compelled to join the SBCVA, which purports to speak on behalf of the entire Santa Barbara County wine industry.

2. Plaintiffs Norm Yost and Kathleen Griffith built Flying Goat Cellars from the ground up over the past two decades. Since 2000, they have grown their small family-owned winery in Lompoc into a celebrated producer of Santa Barbara County wine. They have served their own customers and pursued their own vision of what their winery should be. But the Santa Barbara County Board of Supervisors, at the lobbying of a private trade association, the SBCVA, has circumscribed Plaintiffs' ability to follow their own vision.

3. Plaintiffs attempted to remedy this violation by sending a letter to the Board of Supervisors and the SBCVA expressing disagreement with the establishment of the SBCWID, raising constitutional concerns respecting its operation, and asking to be given the opportunity to opt out of the SBCWID. That request and those concerns have gone unanswered. Faced with no other choice, Plaintiffs file this action and seek relief from this Court. This lawsuit asks the Court to determine whether the County can impose such a heavy burden on one private business to benefit other private entities. The Constitution is clear: it cannot.

**JURISDICTION AND VENUE**

4. This action is brought under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under the color of state law, of rights secured by the First, Fifth, and Fourteenth Amendments to the United States Constitution. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343.

5. This Court has authority to grant declaratory and other relief under 28 U.S.C. §§ 2201 and 2202.

6. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

7. This Court has personal jurisdiction over all Defendants. Defendant Santa Barbara County Board of Supervisors is a governmental body of Santa Barbara County, California; Defendant SBCVA is incorporated and operates in Santa Barbara County, California; and Defendant Nelson resides and performs his official duties in Santa Barbara County, California.

**PARTIES**

8. Plaintiff Norm Yost is the founder, co-owner, and Chief Executive Officer of Flying Goat Cellars. As a co-owner, Yost has a direct personal financial interest in the mandatory assessment and a direct personal First Amendment interest in not being compelled to subsidize the SBCVA's speech or forced to associate with the SBCVA's expressive mission.

9. Plaintiff Kathleen Griffith is the co-owner, Secretary, and Chief Financial Officer of Flying Goat Cellars. As a co-owner, Griffith has a direct personal financial interest in the mandatory assessment and a direct personal First Amendment interest in not being compelled to subsidize the SBCVA's speech or forced to associate with the SBCVA's expressive mission.

10. Flying Goat Cellars, Inc. is a California general corporation duly organized and existing under the laws of the State of California bearing California Secretary of State Entity Number 2667092. Plaintiffs' principal place of business is located at 1520 East Chestnut Court, Unit A, Lompoc, California 93436, Santa Barbara County.

11. At all times relevant to this action, Plaintiff Flying Goat Cellars, Inc., was and is engaged in the production and sale of wines operating as a lawfully licensed business within the State of California.

12. Defendant Santa Barbara County Board of Supervisors is a government entity that is located in Santa Barbara County and sets policy for the County's departments, budget, and ordinances. It is headquartered at 105 East Anapamu Street, Santa Barbara, California 93101.

13. Under California Government Code § 25303, the Board's duty is to "[S]upervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly insofar as the functions and duties of such county officers and officers of all districts and subdivisions of the county relate to the assessing, collecting, safekeeping, management, or disbursement of public funds."

14. The Board of Supervisors is the final policy making authority for the County and through its actions established the SBCWID challenged herein.

15. The Board is specifically authorized by California law to establish Business Improvement Districts pursuant to the Property and Business Improvement District Law of 1994, Cal. Streets & Highways Code §§ 36600–36671.

16. On February 11, 2025, the Board exercised that authority by adopting Resolution 25-18, creating the SBCWID and designating the SBCVA as its Owner's Association. The Board bears the ultimate responsibility for the creation, implementation, and ongoing enforcement of the SBCWID.

17. The Board is a person amenable to suit under 42 U.S.C. § 1983 through its final policymaking authority. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Resolution Number 25-18 constitutes the official policy of the Board giving rise to Plaintiffs' constitutional injuries.

18. Defendant Santa Barbara County Vintners' Association ("SBCVA"), is a tax-exempt business league organized under I.R.C. 501(c)(6). The SBCVA serves as the Owners' Association for the SBCWID. A true and correct copy of the Agreement for Services is attached hereto as Exhibit 1. The SBCVA's principal location is 140 West Highway 246, Box 1059, Buellton, California 93427.

19. Under the agreement with the Board, the SBCVA carries out the government function of collecting the mandatory assessment and can assess further fines in accordance with the agreement.

20. The SBCVA performs a public function delegated to it by the Board, operates pursuant to governmental authority it could not exercise absent the Board's

4

resolution, and acts in concert with the Board and its agents to enforce the mandatory assessment, including through the imposition of fines for nonpayment in accordance with the District Management Plan approved by the Board.

21.    The SBCVA is therefore a state actor for purposes of 42 U.S.C. § 1983 under the joint action and public function doctrines.

22.    Defendant Bob Nelson is the Chairman of the Board, and resides within Santa Barbara County, California. He holds his position under California Government Code §§ 25020 and 25020.1, under which he presides at all meetings of the board and has the power to perform such duties as are prescribed by law or by the board. He is a "person" under 42 U.S.C. § 1983 and at all relevant times acted under color of state law. He is sued in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

**FACTUAL ALLEGATIONS**

23.    The SBCVA, a private trade association that has been in existence since 1983, lobbied the Santa Barbara County Board of Supervisors to create the SBCWID in 2019–2020 and again in 2024–2025.

**The government compels what persuasion could not obtain.**

24.    Prior to the February 2025 establishment of the SBCWID, the SBCVA was a voluntary association.

25.    Plaintiffs are informed and believe, and on that basis allege, that prior to the establishment of the SBCWID, the SBCVA only had approximately 30% of the county's wineries as voluntary members before the establishment of the SBCWID.

26.    The remaining 70% of wineries in the county, including Flying Goat, did not believe the SBCVA membership dues were worth the benefits of the association.

27.    SBCVA failed to achieve its goals through voluntary membership and then lobbied the Santa Barbara County Board of Supervisors to compel membership in the SBCVA rather than focus on persuading nonmembers about the benefits of membership.

28.    The SBCVA tried and failed in 2020 to convince the Board of Supervisors to establish a wine improvement district in the County for the benefit of the SBCVA.

29. The SBCVA tried again in 2024 to convince the Board to create a wine district for the County. It began by receiving approval from the Board to examine the County's sales and use tax records to determine the wineries within the proposed district and their share of each winery's business compared to the total wineries within the proposed district to calculate a verified weighted vote.

30. A general business improvement district can only be established on a vote of the businesses that will pay over 50% of the assessments proposed to be levied, where each winery's vote is weighted by each winery's proportional contribution to the total assessment. This structure gave large, high-revenue wineries disproportionate voting power. This weighted voting structure gives little chance to small wineries like Flying Goat to have a meaningful say.

31. There were 126 petitions in favor of the SBCWID, which accounted for 59.69% of the weighted vote. A true and correct copy of a presentation by the SBCVA to the Board of Supervisors at the February 11, 2025, Board Meeting is attached hereto as Exhibit 2.

32. On February 11, 2025, the Board of Supervisors adopted Resolution Number 25-18, creating the SBCWID in accordance with the provisions of the Property and Business Improvement District Law of 1994, Streets and Highways Code section 36600–36671. A true and correct copy of Resolution Number 25-18 is attached hereto as Exhibit 3.

33. The SBCVA has been designated as the Owners' Association in accordance with Streets and Highways Code section 36651.

34. Resolution Number 25-18 established a five-year term for the SBCWID beginning on April 1, 2025, and ending five years after that date unless renewed pursuant to Streets and Highways Code § 36660.

35. Resolution Number 25-18 adopted the Management Plan for the SBCWID proposed by the SBCVA. A true and correct copy of that Management Plan is attached hereto as Exhibit 4. This plan lays out the general plans for the SBCVA for its first five-

year term, designates an entity to collect the assessment, and allows for the imposition of fines against wineries who fail to pay the assessment.

36.     Resolution Number 25-18 levied an assessment on wine tasting facilities at a rate of one percent (1%) of gross sales revenue of assessed wine tasting facilities. The assessment is not collected on purchases made outside of the state of California or purchases made pursuant to contracts executed prior to April 1, 2025. Exhibit 3 at 3 ¶ 8.

37.     Pursuant to Resolution 25-18, SBCVA and the Board entered into an "Agreement for Services" on April 1, 2025. *See* Ex. 1.

38.     Under that agreement, the County shall cause its third-party collection agency to forward to SBCVA all SBCWID assessment funds collected within thirty (30) days of collection, less any collection, administrative, and compliance fees as authorized in the SBCWID Management District Plan. *Id.* at 1 ¶ 2.

39.     The County is required to remit those fees directly to the SBCVA. Only in limited situations can the County direct the collected assessment elsewhere, such as in the event of any claim or litigation related to the SBCWID. *Id.*

40.     In the event of a claim or litigation related to the SBCWID, the County may order SBCVA in writing to suspend, delay, or interrupt the services under the agreement in whole or in part. *Id.* at 8 ¶ 5.

**The SBCVA begins to collect the assessment as "membership fees."**

41.     Paying the assessment is equivalent to membership in two ways. First, the SBCVA phased out membership fees for those wineries that were members of the SBCVA before the establishment of the SBCWID because the levied assessment replaced the membership fee. Second, the SBCVA's Board of Directors is considering, and may already have implemented, a program allowing wineries outside Santa Barbara County to join the SBCVA by paying a fee equivalent to the one-percent assessment paid by mandatory members. A true and correct copy of the November 18, 2025, Meeting Minutes of the SBCVA Board of Directors Meeting is attached hereto as Exhibit 5.

42.     Wineries are responsible for the collection and payment of the assessment. Wineries can collect the assessment in one of two ways. They can "absorb" the assessment, or pass the assessment along to the consumer. If "absorbed," the winery simply pays the fee from its own revenue. If passed on to the customer, the winery must make it a line item on the receipt, and it must be disclosed in advance of the transaction, and identified as the "Wine Preserve Assessment." If passed along to guests, the assessment is part of the taxable gross receipt. A true and correct copy of the SBCWID "Best Practices" created by the SBCVA is attached hereto as Exhibit 6.

43.     The SBCVA treats the mandatory assessment as a membership fee, effectively making all wineries, including Flying Goat, members of the SBCVA in every meaningful sense. The exception is that these wineries are not given a choice as to whether to be members.

44.     But for the mandatory assessment program challenged herein, Flying Goat would not currently be a member of the SBCVA, even though it has in the past when it saw a benefit in the voluntary association.

45.     Plaintiffs paid or caused to be paid the mandatory assessment in each quarter since the collections began, including in July 2025, October 2025, January 2026, and April 2026. Plaintiffs paid this fee solely because they were forced to do so by law, under protest, and not because (1) they agreed with the actions of the SBCVA; (2) they believed SBCVA was good for their wine business; (3) felt there was any benefit in belonging to the SBCVA, or (4) had any other desire to be a member of SBCVA.

46.     Plaintiffs have decided not to pass along the fee to their customers for multiple reasons, including hardships with respect to incorporating the assessment in their point-of-sale system and because passing the fee along to their customers requires additional compelled speech about the purpose of the assessment—speech with which Plaintiffs disagree. Specifically, to pass along the fee would require Plaintiffs to post a sign near the register that states the purpose of the fee is to "support the preservation and promotion of Santa Barbara Wine County" and the suggested fee-pass-on flyer has the

8

logo of the SBCVA further requiring compelled association with SBCVA. A true and correct copy of a template created by the SBCVA for wineries to place in their tasting room is attached hereto as Exhibit 7.

47. The SBCVA has consistently maintained that the assessment is a fee, not a tax. *See* Ex. 6. This is important because if the assessment is a fee, Plaintiffs are entitled to opt out if they derive no benefit; but if it is a tax, it must comply with California's constitutional requirements for voter approval and public benefit, which the SBCWID has not done.

**How the SBCVA spends the mandatory assessment.**

48. Plaintiffs do not agree with the actions of the SBCVA and do not believe the SBCVA benefits them.

49. Among other things, Plaintiffs disagree with (1) SBCVA's marketing activities; (2) SBCVA's lobbying activities; (3) SBCVA's charitable activities; (4) the use of funds for SBCVA officials to take trips to South Korea in 2025 and Japan in 2026 for the purported purpose of developing export markets and gaining international recognition neither of which benefit Plaintiffs; (5) SBCVA's use of current Business Improvement District ("BID") funds for reimbursement for setting up the BID over the past five years; and (6) using funds from the assessment to support the wholesale market on the belief that it helps bolster direct-to-consumer sales.

50. The SBCVA uses the mandatory assessment funds for a broad range of activities, including for events, community engagement, "government education," industry education, marketing, public relations, and philanthropy. *See* Exs. 2 at 6 & 4 at 8. "Government education" means advocacy directed at government officials and is more commonly known as lobbying. Philanthropy directs Plaintiffs' money to charitable causes of SBCVA's choosing. These uses do not constitute generic, non-ideological commercial advertising, but are expressive, ideological, and political activities that Plaintiffs are compelled to fund and associate with.

9

51.     Underlying these disagreements is the fact that Flying Goat Cellars markets wine differently than the large estates that dominate the Santa Barbara County wine industry. Rather than focusing on export markets or international recognition, Flying Goat serves local customers in Lompoc and the surrounding area. Norm and Kathleen have built their business on direct relationships with wine drinkers who come through their doors, not the kind of broad promotion campaigns the SBCVA favors. Their vision for *their* winery and the SBCVA's vision for the Santa Barbara County wine industry are not the same.

**The (unanswered) demand letter requesting the opportunity to opt-out of the SBCWID.**

52.     In February 2026, Flying Goat Cellars sent a letter to the Board and the SBCVA highlighting the constitutional deficiencies with the SBCWID and requesting the opportunity to opt-out of the association and the requirement to pay the assessment and to support SBCVA's speech. A true and correct copy of the Demand Letter sent to the Board and the SBCVA is attached hereto as Exhibit 8.

53.     The letter identified the SBCWID's violations of the First and Fifth Amendments in detail and demanded that the County amend the SBCWID to permit individual wineries to opt in (or at least opt out) rather than be automatically enrolled in the SBCVA and the mandatory assessment. *Id.*

54.     Neither the Board nor the SBCVA have responded to Plaintiffs' letter or offered Plaintiffs the opportunity to opt out of the SBCVA and the SBCWID.

55.     The unconstitutional assessment continues to be collected and remitted to the SBCVA on a quarterly basis, and Defendants have made clear, through their silence and inaction, that the SBCWID will continue in its current form without amendment.

**First Amendment Injuries to Plaintiffs**

56.     The First Amendment, made applicable to the states through the Fourteenth Amendment, protects the rights of Plaintiffs to speak freely and to freely associate. These protections include the rights to not be compelled to speak, including through the subsidization of speech, and the right to not be forced to associate with an organization with which the Plaintiffs do not wish to associate.

57.     Defendants violate these rights by forcing Plaintiffs to subsidize the speech of the SBCVA through the assessment and associate with the SBCVA by effectively making Plaintiffs members of the SBCVA. *See* Ex. 5.

58.     Plaintiffs wish to make their own decisions about marketing, promotion, and industry advocacy for Flying Goat Cellars. The mandatory assessment costs Plaintiffs money they could have spent on their own expressive choice instead of mandatory support for the SBCVA's ideas.

59.     Defendants therefore have violated, are now violating, and unless enjoined by this Court, will continue to violate, the Plaintiffs' First Amendment right not to associate, and their First Amendment rights by forcing Plaintiffs to subsidize the speech of a private organization.

**Fifth Amendment Injuries to Plaintiff**

60.     The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "nor shall private property be taken for public use, without just compensation."

61.     Defendants have taken Plaintiffs' private property for a nonpublic use—the funding of a private association. The Supreme Court has held that private property includes both real property and personal property, and that the taking of money can trigger a Fifth Amendment takings analysis.

62.     The purpose of the private association under the SBCWID is to benefit the wine industry in the county, not the public.

11

63.     The California statute authorizing the SBCWID expressly states that benefit assessments serve "local" and private business interests, not the public at large. Cal. Streets & Highways Code § 36601(c). Plaintiffs absorb the assessment from their own revenue rather than passing it on to customers, meaning that each quarterly payment is a direct reduction of their personal property with no public benefit to justify the taking of their money.

**Declaratory and Injunctive Relief Allegations**

64.     An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.

65.     Due to Defendants' actions, policies, and resolutions, Plaintiffs are forced to associate with the SBCVA and subsidize its speech through a one-percent fee on the gross sales of the wine tasting facilities on purchases made in California. Defendants have not permitted Plaintiffs to opt-out of this association or the SBCWID even though Plaintiffs have requested such an opportunity. Plaintiffs will then continue to be forced to associate with the SBCVA and fund its activities.

66.     Plaintiffs contend, pursuant to 42 U.S.C. § 1983, that the actions of Defendants as described herein violate Plaintiffs' right of free speech by compelling speech by forced subsidization, Plaintiffs' right of free association by mandating association with SBCVA, and Plaintiffs' right not to have their private property taken from them except for a legitimate public use, in violation of the Fifth Amendment. Plaintiffs are informed and believe, and on that basis allege, that Defendants hold their actions as described herein to be lawful in all respects.

67.     Accordingly, declaratory relief is appropriate.

68.     If not permanently enjoined by the Court, Defendants and their agents, representatives, officers, and employees will continue enforcing the SBCWID requirements against the Plaintiffs which does now and will continue to cause Plaintiffs to suffer irreparable injury.

69.    Plaintiffs have no plain, speedy, and adequate remedy at law for these injuries.

70.    Accordingly, injunctive relief is appropriate.

## CAUSES OF ACTION

### Count 1
### Compelled Speech in Violation of the First Amendment
### (42 U.S.C. § 1983)

71.    Plaintiffs incorporate and re-allege each and every allegation contained in paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.    The First Amendment, made applicable to the states and local governments through the Fourteenth Amendment, protects the freedom of speech, which includes the right to avoid subsidizing the speech of other private speakers.

73.    The SBCVA uses the assessment collected from wineries in the county, including from Plaintiffs, to subsidize its speech, including any lobbying or advocacy done by the SBCVA.

74.    Plaintiffs have paid the assessments not because they believe in the work performed by the SBCVA or believe the SBCVA speech is beneficial to them, but because they are required to do so by law.

75.    The SBCWID provides no mechanisms for a winery to opt-out of having the assessment fund speech, even the speech the winery disagrees with or does not find beneficial to the winery.

76.    The SBCWID and the SBCVA provide no mechanism for Plaintiffs to receive a refund of the assessment if Plaintiffs disagree with the speech of the SBCVA.

77.    The Santa Barbara County Board of Supervisors approved the creation of the SBCWID and thus it is their official policies and actions that require Plaintiffs to subsidize the speech of the SBCVA, the entity chosen by the Board of Supervisors to manage the SBCWID.

13

78.     Generally, the government cannot mandate that an individual subsidize the speech of a private association unless the speech is government speech or part of a comprehensive regulatory scheme.

79.     If the assessments are not ancillary to a more comprehensive program, and advertising itself is the principal object of the scheme, then the compelled subsidy to fund a private association violates the First Amendment.

80.     The speech of the SBCVA is not government speech. The government does not control the message. The Santa Barbara County Board of Supervisors has no role in approving or disapproving the speech of the SBCVA. No member of the Board is on the Board of the SBCVA.

81.     The SBCWID is not part of a larger regulatory scheme for the wine industry. The SBCVA has no regulatory authority, and does not purport to exercise any regulatory control, over the wine industry or winery owners in the county, including Plaintiffs.

82.     There is no compelling, substantial, important, or even rational reason served by the requirement that Plaintiffs subsidize the speech of the SBCVA as SBCVA possesses no regulatory authority over the wine industry, and has no oversight function of the wine industry in the county, and as the Board of Supervisors has no role in overseeing the speech of the SBCVA.

83.     As a direct result of this compelled subsidy, Plaintiffs continue to suffer an immediate and direct injury as Plaintiffs are forced to subsidize the speech of the SBCVA.

84.     Plaintiffs are informed and believe, and on that basis allege, that the Defendants contend the subsidization of speech of a private association, the SBCVA, through the assessment raises no problems under the First Amendment and is lawful in all respects, and that the Defendants will continue to enforce this forced subsidization. This deprivation of constitutional rights is causing Plaintiffs to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined, Plaintiffs will continue to suffer irreparable harm.

14

85.     Plaintiffs have already suffered financial damage through the payment of the assessment, and the assessments are ongoing.

**Count 2**
**Compelled Association in Violation of the First Amendment**
**(42 U.S.C. § 1983)**

86.     Plaintiffs incorporate and re-allege each and every allegation contained in paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.     The First Amendment, made applicable to the states and local governments through the Fourteenth Amendment protects not only the freedom to associate but also the freedom to *not* associate.

88.     By its very nature, the SBCWID violates this right. Under the SBCWID, all wineries in the County are in substance forced to be members of the SBCVA (notwithstanding whatever euphemisms the Board and SBCVA may employ for this compulsory membership).

89.     The mere requirement that Plaintiffs associate with the SBCVA is sufficient to cause an associational injury. But this is more than just pure association. SBCVA has a specific vision for the wine industry in Santa Barbara County. One that includes a more international reach. Plaintiffs disagree with this vision but are nevertheless forced to associate with this message.

90.     Mandatory associations are only permissible when they serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms. Courts generally only permit compelled membership where the mandatory association exercises genuine regulatory authority over a licensed profession or provides an orderly labor market like in the case of bar associations. The SBCVA exercises no regulatory authority, issues no licenses, and has no disciplinary power over any winery in Santa Barbara County. It is solely a promotional trade association.

91.     Compelling association with such an entity serves no compelling—or even rational—government interest.

15

92. The Board approved the creation of the SBCWID, and thus it is their official policies and actions that require Plaintiffs to associate with the SBCVA, the entity chosen by the Board to manage the SBCWID.

93. There is no compelling, substantial, important, or even rational reason served by mandatory association with a trade association that possesses no regulatory authority over the wine industry, and has no oversight function of the wine industry in the county, or Flying Goat Cellars specifically.

94. As a direct result of this compelled association, Plaintiffs continue to suffer an immediate and direct injury, as Plaintiffs are forced to associate with the SBCVA.

95. Plaintiffs are informed and believe and on that basis allege that the Defendants contend the mandatory association is lawful in all respects, and that Defendants will continue to enforce this mandatory association.

96. This deprivation of constitutional rights is causing Plaintiffs to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined, Plaintiffs will continue to suffer irreparable harm.

### Count 3
### Taking without Just Compensation in Violation of Fifth Amendment
### (42 U.S.C. § 1983)

97. Plaintiffs incorporate and re-allege each and every allegation contained in paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98. The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation."

99. The Fifth Amendment's protections for private property include both real and personal property.

100. The SBCWID compels Plaintiffs to make a specific, identifiable transfer of money to a named private trade association. This is not a general tax with funds going to the government for spending. Rather it is a government-mandated transfer of funds

16

directly to a private party. The government cannot recharacterize a forced transfer of property to a private party as a mere regulatory fee and thereby escape the Takings Clause.

101. A physical appropriation of money or property is a *per se* taking.

102. The SBCWID amounts to a physical taking of money, Plaintiffs' personal property, through the levying of a one-percent assessment on the gross sales of the wine tasting facilities on purchases made in California.

103. The Board and the SBCVA maintain that the assessment is not a "tax" and, if the assessment is passed along to the customer, the assessment itself must actually be included in the sales tax calculation.

104. There is no sufficient "public use" to justify this taking, as the money is taken by the County through the establishment of the SBCWID and given directly to a private entity, the SBCVA, for the direct benefit of private businesses (i.e., wineries) in the county.

105. There is no direct public benefit for this taking. In fact, the purpose of the SBCWID is to benefit the wineries and the wine industry, not the public.

106. Plaintiffs are informed and believe, and on that basis allege, that the Defendants contend the assessment is not a taking under the Fifth Amendment and is lawful in all respects, and, as such, that the Defendants will continue taking Plaintiffs' private property under the assessment measures described herein. This deprivation of constitutional rights is causing Plaintiffs to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined, Plaintiffs will continue to suffer irreparable harm.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and:

A. A declaratory judgment by the Court that the Defendants' implementation, enforcement, and running of the SBCWID requires Plaintiffs to subsidize

the speech of a private association for the benefit of a private industry in violation of the First Amendment;

B. A declaratory judgment by the Court that the Defendants' implementation, enforcement, and running of the SBCWID compels Plaintiffs to associate with the SBCVA in violation of the First Amendment;

C. A declaratory judgment by the Court that the Defendants' implementation, enforcement, and running of the SBCWID amounts to a taking not for the public use in violation of the Fifth Amendment by requiring the payment of an assessment;

D. A permanent injunction prohibiting Defendants and all persons in active concert or participation with them from enforcing Resolution 25-18 and any associated agreements for services executed with respect to that Resolution, or, in the alternative, an order requiring Defendants to provide an opt-out mechanism under which individual wineries may, upon written request, be exempted from the mandatory assessment and the deemed membership in the SBCVA;

E. Award Plaintiffs actual damages in the form of a refund of all "assessments" paid to the SBCVA (which Plaintiffs paid under protest);

F. An award of nominal damages in the amount of $1.00 for the Defendants' past infringement of Plaintiffs' constitutional rights under the First and Fifth Amendments to redress each completed violation of Plaintiffs' constitutional rights;

G. Award Plaintiffs their costs, attorneys' fees, and other expenses in accordance with law, including 42 U.S.C. § 1988; and

H. Such other legal and equitable relief the Court may deem appropriate and just.

**RESPECTFULLY SUBMITTED** this 21st day of May 2026.

GOLDWATER INSTITUTE

/s/ *Timothy Sandefur*
Timothy Sandefur (224436)
Adam Shelton (Pro Hac Vice Pending)
Scharf-Norton Center for
 Constitutional Litigation at the
GOLDWATER INSTITUTE
500 E. Coronado Rd.
Phoenix, Arizona 85004

/s/ *Michael K. Friedland*
Michael K. Friedland (157217)
**FRIEDLAND CIANFRANI LLP**
17901 Von Karman Ave., Ste. 925
Irvine, California 92614
(949) 734-4900
Michael.friedland@fciplaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

ORIGINAL E-FILED this ___ day of_____, 2026, with a copy delivered via the ECF system to:

/s/ *Kris Schlott*
Kris Schlott, Paralegal